UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DARRELL PHILLIPS,
a/k/a JASON PHILLIPS,

        Petitioner,

v.                                                               Case Number 06-15192
                                                                     Honorable Thomas L. Ludington

BLAINE LAFLER,

        Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Darrell Phillips, currently confined at Newberry Correctional Facility in Newberry, Michigan, has filed an application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted in Wayne County, Michigan of first-degree murder, armed robbery, possession of a firearm by a felon, and possession of a firearm during the commission of a felony (felony firearm). Petitioner was sentenced to concurrent terms of life imprisonment for the murder and robbery and three to five years in prison for being a felon in possession of a firearm. He received a consecutive term of two years in prison for the felony firearm conviction. Petitioner alleges that the *corpus delecti* rule was violated, that he was found guilty on the basis of insufficient evidence, and that his trial attorney was ineffective. Respondent Blaine Lafler urges the Court to deny the habeas petition on the grounds that Petitioner's first claim is not cognizable on habeas corpus review and that the state court's adjudication of Petitioner's other claims did not involve an unreasonable application of clearly established federal law as determined by the Supreme Court. The Court agrees. Accordingly, the habeas petition will be **DENIED**.

I

A

Petitioner's convictions arose from an incident on August 19, 2000, when Kenneth Johnson was shot and killed at an apartment building on Second Street in Detroit. No suspects were arrested initially. However, the police re-investigated the case about a year and a half after the crime and then charged Petitioner and Miguel Harris with the crime. The two men were tried jointly, but before separate juries, in Wayne County Circuit Court.

Jessie Collins testified that he knew the defendants and lived in the same apartment building as Kenneth Johnson and Johnson's girlfriend, Paula Wilson. Collins spoke with the defendants and Tommy Fields on the seventh floor of the apartment building late in the afternoon on the day of the murder. Miguel Harris subsequently left the building with Tommy Fields and handed a .38 caliber revolver to Petitioner before leaving. When Harris returned to the apartment building about thirty minutes later, Petitioner returned the gun to Harris, who told Petitioner to put on a hat or "hoody." Harris informed Collins that trouble was about to happen. Collins then left the apartment building because he did not think it was a good time to be there.

Rather Stewart was a tenant in the building. He testified that he heard three or four men arguing with Paula Wilson about 10:25 p.m. on August 19, 2000. The group left, but came back, and Stewart heard more arguing. About twenty minutes later, Stewart heard three gunshots. As he left the building to go to work, Stewart saw Mr. Johnson's body on a landing in the stairwell. He told the building manager and called the police.

The manager of the apartment building, Paul Thomas, testified that he heard two gunshots between 7:00 and 7:30 p.m. on August 19, 2000, while he was making his rounds of the apartment

building. He found Mr. Johnson lying dead in the stairwell. He called the police right away.

Police Officer Michael Ingles testified that he was dispatched to the apartment building at 11:01 p.m., but he was told that the shooting occurred between 10:20 p.m. and 10:30 p.m. He followed a trail of blood from the seventh floor to the stairwell between the fifth and sixth floors where he found Kenneth Johnson's body. There was an open wallet lying on Johnson's stomach.

Dr. Bogusiaw Pietak testified that Mr. Johnson died from a single gunshot wound to the back and that the manner of death was homicide. Evidence technician Michael Choukourian found a spent bullet on the seventh floor of the apartment building and a bullet strike on the wall about twenty feet from Paula Wilson's apartment. He also found blood stains, a wallet, keys, a nail clipper, and some change in the stairwell between the fifth and sixth floors. There was some change, but no paper money, in the wallet.

Serrena Wallace testified that she was Petitioner's former girlfriend and was living with him at her mother's house on August 19, 2000. About 4:00 or 5:00 p.m. that day, she heard Petitioner and Miguel Harris talking about Harris's uncle who recently was locked up and wanted Harris to get some money and things from his girlfriend, who lived on the seventh floor of an apartment building at 3444 Second Street. Petitioner later told Serrena that he was going to help Harris rob his uncle's girlfriend. Petitioner and Harris left the house about 5:00 p.m. Petitioner came back by himself about 6:00 p.m. and said that they could not get in the apartment building. Harris returned to the house that night and left a second time with Petitioner. The two men returned to the house and had a conversation, which Serrena could not hear.

Three or four days later, Serrena and Petitioner were at Petitioner's mother's house when Miguel Harris came over and asked Petitioner whether he had heard what happened. Petitioner

responded that a guy was killed and if Harris had shot the guy, he killed him. Harris replied that he shot at the guy, but did not think that he killed him. Petitioner then said, "Yes, you did, because he's dead."

Serrena asked Petitioner the next day why he did not go outside. He told her the reason was that he did not want people to think he had anything to do with the shooting. Although he had been at the apartment building with Harris earlier that day, he was not with him during the shooting.

Serrena did not see either Petitioner or Miguel Harris with a gun on August 19, but she had seen Harris with a rusty old revolver on another occasion. She did not talk to the police about the incident until April of 2002 when they interviewed her. Petitioner wrote to her while he was incarcerated and asked her how she had become involved and what she planned to say when she went back to court. He said that it would be perfect if she did not show up and that she could have helped him by keeping her mouth shut.

The parties stipulated that, if two firearms examiners were to testify, they would say that the metal jacket bullet, which was recovered from the seventh floor of the apartment building, and a lead fragment, which was taken from the victim's body, were .38 caliber slugs or bullets. Police Investigator Ramone Childs testified that, in April of 2002, he was assigned to a task force that began to re-investigate the shooting at 3444 Second Street. Petitioner was in custody on another offense at the time. Childs interviewed Petitioner at a police precinct where he advised Petitioner of his constitutional rights. Petitioner waived his rights after claiming to understand them. He did not request an attorney and he was not threatened at any point.

Petitioner informed Investigator Childs that a relative of Miguel Harris supposedly had $10,000 in an apartment at 3444 Second Street, but the relative was locked up. He and Harris went

to the apartment early in the day on August 19, 2000, because Harris had "a lick" (robbery or break-in) there. Harris tied up Paula while he (Petitioner) ransacked the place. Two men came to the door while they were there, but the men ran away when they saw the gun. Harris fired one gunshot, but he did not think Harris hit anybody. After Harris left the place, he (Petitioner) ran out the side door and went to his mother's house. He took some jewelry, a pair of shoes, and a digital scale with him. He had not been armed, but Harris possessed a black revolver during the incident. He told Serrena Wallace what they did, and he later heard that Paula's boyfriend had been killed. When Investigator Childs asked Petitioner how he was treated during the interview, Petitioner responded, "Decent. Y'all did the job professionally."

Petitioner did not testify or present any witnesses. His defense was that, although he may have been at the apartment on Second Street on the day in question and may have robbed Paula, he was not present when Kenneth Johnson was shot and he had no involvement with the shooting.

B

The jury was instructed on second-degree murder as a lesser-included offense for first-degree murder and unarmed robbery as a lesser-included offense to armed robbery. On October 1, 2002, Petitioner's jury found him guilty, as charged, of first-degree (felony) murder, Mich. Comp. Laws § 750.316(b), armed robbery, Mich. Comp. Laws § 750.529, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and felony firearm, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of life imprisonment for the murder and robbery and three to five years in prison for being a felon in possession of a firearm.

Petitioner raised his habeas claims in an appeal of right. The Michigan Court of Appeals

vacated Petitioner's conviction and his sentence for armed robbery because double jeopardy prohibits conviction and sentence for "both felony murder and the predicate offense." *People v. Phillips*, No. 246922, 2004 WL 2951959, *3 (Mich. Ct. App. Dec. 21, 2004) (per curiam) (citing *People v. Gimotty*, 549 N.W.2d 39, 42 (Mich. Ct. App. 1996)). The Court affirmed the remaining convictions. On December 9, 2005, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Phillips*, 706 N.W.2d 727 (Mich. 2005). Justice Marilyn Kelly dissented, however, on the ground that the *corpus delecti* rule was violated. In her brief dissent, she recognized the rule "requires the prosecution to prove the underlying felony before a defendant's statement of intent to commit the underlying felony can be used against the defendant to establish the felony murder." *Id.* Justice Kelly voted to grant leave to appeal and to reconsider *People v. Hughey*, 186 Mich. App. 585; 464 N.W.2d 914 (1990).[1]

C

Petitioner filed his habeas corpus petition on November 21, 2006. His claims are:

I. The *corpus delecti* rule was violated where Petitioner's statements concerning the robbery were admitted against him at trial absent any independent proof that a robbery occurred.

II. Petitioner's convictions for felony murder and armed robbery should be reversed because there was insufficient evidence as a matter of law to sustain either guilty verdict beyond a reasonable doubt.

III. Petitioner Phillips received ineffective assistance of counsel at trial for counsel's failure to object to evidence admitted in violation of the *corpus delecti* rule, and for admitting his client's guilt to the jurors during opening statements and closing arguments.

---

[1] The *Hughey* Court reasoned "that the *corpus delicti* rule is satisfied in prosecutions of first-degree felony murder, as well as prosecutions of first-degree premeditated murder, by showing that a death has occurred and that the death resulted from a criminal agency." *Id.* at 916-917.

    IV.        Petitioner Phillips was deprived of his V, VI, and XIV Amendment rights to receive[] the effective assistance of counsel, where counsel [neither] failed to object nor moved to suppress Petitioner's custodial statement obtained through a warrantless arrest, and without probable cause being established. Counsel's failure to seek suppression of Petitioner's statement as tainted fruits stemming from the Detroit police's misuse of a writ to gain custody, and the admission of such evidence during trial, affected the petitioner's trial with constitutional error.

II

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

III

A

Petitioner alleges that the *corpus delecti* rule was violated because his statement to the police, in which he admitted that he committed a robbery, was read into the record at trial in the absence of any independent proof of a robbery. This claim is based on state decisions interpreting Michigan's *corpus delecti* rule.

"[A] federal [habeas] court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991). Therefore, the contention that the prosecution violated the State's *corpus delecti* rule is not cognizable on habeas corpus review. "[F]ederal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the State's "rule of independent evidence, or *corpus delecti*, 'has no independent constitutional footing.'" *Gribble v. Johnson*, 8 F. Supp. 2d 942, 955 (S.D. Tex. 1998) (quoting *Autry v. Estelle*, 706 F.2d 1394, 1407 (5th Cir. 1983)). Consequently, this Court's conclusion that the evidence was constitutionally sufficient, *see infra*, Section III(B), ends the inquiry. *Gribble,* 8 F. Supp. 2d at 955.

B

Petitioner alleges next that his convictions for felony murder and armed robbery should be reversed because there was insufficient evidence as a matter of law to sustain the verdict on those charges. Petitioner contends that there was no evidence of a robbery, apart from his statement to the police, and no connection between the alleged robbery and the murder. Petitioner also contends that the prosecution failed to show that he possessed the necessary intent to be found guilty of armed robbery or felony murder.

i

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, the critical question on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

Petitioner's conviction and sentence for armed robbery were vacated on appeal. The Court therefore must consider only whether the evidence was sufficient to sustain Petitioner's felony murder conviction. The elements of felony murder are:

> (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute, including armed robbery].

*People v. Carines*, 460 Mich. 750, 759; 597 N.W.2d 130, 136 (1999) (quoting *People v. Turner*, 213 Mich. App. 558, 566; 540 N.W.2d 728, 732 (1995), *overruled in part on other grounds by People v. Mass*, 464 Mich. 615, 627-28; 628 N.W.2d 540, 548 (2001)).

Aiding and abetting encompasses "all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which may support, encourage or incite the commission of a crime." *People v. Vicuna,* 141 Mich. App. 486, 495; 367 N.W.2d 887, 891 (1985), *disapproved of on other grounds by People v. Dalessandro*, 165 Mich. App. 569, 574; 419 N.W.2d 609, 612

(1988).

> To prove felony murder on an aiding and abetting theory, the prosecution must show that the defendant (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony. *People v. Carines,* 460 Mich. 750, 755; 597 N.W.2d 130 (1999).

*People v. Riley,* 468 Mich. 135, 140; 659 N.W.2d 611, 614 (2003). Malice may be inferred from the facts and circumstances surrounding the commission of another felony, *People v. Spearman*, 195 Mich. App. 434, 438; 491 N.W.2d 606, 609 (1992), *overruled on other grounds by People v. Veling*, 443 Mich. 23, 42-43; 504 N.W.2d 456, 465 (1993), including the use of a deadly weapon, *Turner*, 213 Mich. App. at 567; 540 N.W.2d at 733. "[I]f an aider and abettor participates in a crime with knowledge of the principal's intent to kill or to cause great bodily harm, the aider and abettor is acting with 'wanton and willful disregard' sufficient to support a finding of malice." *Riley*, 468 Mich. at 140-141; 659 N.W.2d at 614 (end citations omitted).

ii

The Michigan Court of Appeals accurately summarized the facts as follows:

> [Petitioner] admitted [in his statement to the police] that he and [Miguel] Harris had gone to the victim's apartment intending to commit an armed robbery, that Harris had a revolver, and that they took jewelry, shoes, and a digital scale from the apartment. In addition, Jessie Collins testified that at least at one time while [Petitioner] was at the apartment building on the night the victim was shot, [Petitioner] had possession of a revolver. Further, [Petitioner's] girlfriend at the time of the murder, Serrena Wallace, testified that she overheard [Petitioner] and Harris planning to rob the victim's apartment, and stated that [Petitioner] himself had informed her that he was intending to assist Harris in robbing the apartment.

*People v. Phillips*, 2004 WL 2951959, at *3.

The state court of appeals acknowledged that Ms. Wallace "also testified that [Petitioner]

told her that he was not at the apartment building at the time the victim was shot, and that she had not seen [Petitioner] carrying any stolen property that night." The court of appeals nevertheless "view[ed] the evidence in the light most favorable to the prosecution and conclude[d] that the prosecution introduced sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that [Petitioner] committed armed robbery." *Id.*

This Court agrees with the state court's analysis. Petitioner knew of Harris's intent to rob Paula Wilson and he knew that Harris was armed with a revolver. Harris's use of a gun during the robbery to shoot an apparently innocent bystander in the back established that the killing was neither accidental nor done without malice. Even if Petitioner did not personally use the gun or intend to kill Kenneth Johnson when he accompanied Harris to the apartment on Second Street, the jury could have inferred that he acted with malice, that is, with wanton and wilful disregard of the possibility that death or great bodily harm would result. By engaging in an armed robbery with Miguel Harris, Petitioner "set in motion a force likely to cause death or great bodily harm." *Carines*, 460 Mich. at 760; 597 N.W.2d at 136-37.

A rational trier of fact could have concluded that Petitioner aided and abetted Miguel Harris in an armed robbery and thereby created a high risk of death or great bodily harm, knowing that death or great bodily harm might result. Thus, there was sufficient evidence of malice, particularly when all inferences are drawn in favor of the prosecution. The state court's conclusion -- that the evidence was sufficient to sustain Petitioner's conviction -- was not contrary to, or an unreasonable application of, *Jackson*.

C

The third and fourth habeas claims allege ineffective assistance of trial counsel. Petitioner

maintains that his trial attorney should have objected to the admission of his statement to the police on grounds that the statement was admitted in evidence in violation of the *corpus delecti* rule and was obtained in the absence of either a warrant or probable cause.[2] Petitioner further alleges that defense counsel was ineffective for conceding Petitioner's guilt during opening statements and closing arguments. The Michigan Court of Appeals found no merit in these claims.

To prevail on a claim of ineffective assistance, Petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. A deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

i

Petitioner alleges that his attorney should have objected to the admission of his statement to the police on the ground that its admission violated the State's *corpus delecti* rule. The Michigan Court of Appeals was the last state court to adjudicate the merits of this claim. It held that the *corpus delecti* rule was not violated and, therefore, defense counsel was not ineffective for failing

---

[2] Defense counsel moved to suppress Petitioner's statement to the police, but on a different basis. Counsel argued at a pretrial hearing that the police questioned Petitioner after he requested an attorney. The investigator who interrogated Petitioner insisted that Petitioner did not request an attorney. The trial court denied Petitioner's motion after finding the investigator to be more credible than Petitioner.

to object to the admission of Petitioner's statements about the robbery.[3] The *corpus delecti* "rule provides that a defendant's confession may not be admitted unless there is direct or circumstantial evidence independent of the confession establishing (1) the occurrence of the specific injury (for example, death in cases of homicide) and (2) some criminal agency as the source of the injury. *People v. Konrad*, 449 Mich. 263, 269-270; 536 N.W.2d 517, 520 (1995) (citing *People v. Cotton,* 191 Mich. App. 377, 394; 478 N.W.2d 681 (1991)). The rule "is designed to prevent the use of a defendant's confession to convict him of a crime that did not occur." *Id.,* 449 Mich. at 269; 536 N.W.2d at 520 (1995). The prosecutor is required to show only that someone committed the crime; the perpetrator's identity is not a part of the *corpus delicti*. *Id.,* 449 Mich. at 270; 536 N.W.2d at 520.

Evidence linking Petitioner to the crime was established before his statement to the police was read into the record. Serrena Wallace testified that Petitioner said he was going to help Miguel Harris commit a robbery. That same day, Jessie Collins saw Petitioner hand a .38 caliber gun to Harris before he and Harris put on "hoodies" and went to Paula Wilson's apartment. Harris then informed Collins that trouble was about to happen. Rather Stewart subsequently heard gunshots, and the gun that Jessie Collins had seen Petitioner hand to Harris was compatible with the bullet fragment found in Kenneth Johnson's body. A forensic pathologist testified that Johnson died from a single gunshot wound to the back and that the manner of death was homicide.

After all this evidence was introduced, Investigator Childs read Petitioner's inculpatory statement into the record. Because the prosecutor had already presented evidence that a death

---

[3] Although Michigan Supreme Court Justice Marilyn Kelly subsequently held in a dissenting opinion that the *corpus delecti* rule was violated in Petitioner's case, the majority of the Michigan Supreme Court denied leave to appeal without deciding the issue.

occurred by a criminal agency, defense counsel was not ineffective for failing to argue that the *corpus delecti* rule was violated and that Petitioner's statement should be suppressed. An attorney is not ineffective for failing to make a meritless motion. *Johnson v. Tennis*, 549 F.3d 296, 303 (3rd Cir. 2008) (citing *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999)).

ii

Petitioner was in custody at a state facility in Jackson, Michigan on an unrelated offense when the police used a state writ of habeas corpus to bring him to a police precinct in Detroit for questioning in this case. Petitioner contends that his attorney should have moved to suppress his subsequent statement to the police on the ground that the police misused the writ of habeas corpus to gain custody of him and then arrested him without a warrant or probable cause.

The Michigan Court of Appeals determined that the police did not violate state procedures when obtaining a writ of habeas corpus to secure Petitioner's presence for questioning. This Court must defer to the state court's decision on an issue of state law, *Bush v. Gore*, 531 U.S. 98, 112, 114 (2000), particularly because the issue is one of state procedural law, *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001). The reason for this deference is that "state courts are the final authority on state law." *Israfil*, 276 F.3d at 771 (citing *Hutchison v. Marshall,* 744 F.2d 44, 46 (6th Cir. 1984)). Assuming then, that the police did not commit a state procedural error, defense counsel was not ineffective for failing to challenge the admission of Petitioner's statement.

Furthermore, before the police interrogated Petitioner, they had reason to believe that he had committed a crime. The police had statements from

> [Jessie] Collins indicating that [Petitioner] was at the victim's apartment building on the day of the murder, from [Serrena] Wallace indicating that [Petitioner] had gone to the apartment building on the night the victim was murdered intending to rob the victim's apartment, and from [Miguel] Harris indicating that [Petitioner] had been

>    directly involved in the events giving rise to this suit and that [Petitioner] had been
>    the one to shoot the victim.

*Phillips*, 2004 WL 2951959, at *4. Defense counsel was not ineffective for failing to move to suppress Petitioner's statement on the ground that the police lacked probable cause or an arrest warrant.

### iii

Petitioner's final claim about his trial attorney is that counsel was ineffective for admitting that Petitioner was guilty of the robbery. The Michigan Court of Appeals reviewed this issue and concluded otherwise.

In capital cases,[4] a presumption of prejudice applies when a defense attorney fails entirely to function as his client's advocate. *Florida v. Nixon*, 543 U.S. 175, 189 (2004) (citing *United States v. Cronic*, 466 U.S. 648 (1984)). However,

> [w]hen counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent. Instead, if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter; no tenable claim of ineffective assistance would remain.

*Id*. at 192. *Strickland* requires the defendant "to show that counsel's concession strategy was unreasonable." *Id*. at 189. "The reasonableness of counsel's performance, after consultation with the defendant yields no response, must be judged in accord with the inquiry generally applicable to ineffective-assistance-of-counsel claims: Did counsel's representation 'f[a]ll below an objective standard of reasonableness'?" *Id*. at 178 (quoting *Strickland*, 466 U.S. at 688).

---

[4] Michigan does not have the death penalty. The penalty for first-degree murder (life imprisonment without the possibility of parole) is the most severe penalty in the State.

In his opening statement, defense counsel said that Petitioner would not deny robbing Paula Wilson, but he would deny any involvement in the subsequent shooting of Kenneth Johnson. During closing arguments, the attorney stated that Petitioner may have robbed Paula Wilson, but that Petitioner was not at the apartment when Kenneth Johnson was shot. These comments obviously were based on Petitioner's statement to Investigator Childs that he and Miguel Harris committed an armed robbery at Paula Wilson's apartment. Because Petitioner had already made this admission in a pretrial statement, which the trial court declined to suppress, counsel's concession strategy did not fall below an objective standard of reasonableness. In the absence of an objection from Petitioner, it was not unreasonable to concede that Petitioner was guilty of armed robbery, but not first-degree murder, which is punishable by a more severe sentence.[5] "[C]ounsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in 'a useless charade.'" *Nixon*, 543 U.S. at 192 (quoting *Cronic,* 466 U.S. at 656 n. 19); *see also Raedeke v. Trombley*, No. 08-1407, 2009 WL 751096, at *8 (6th Cir. Mar. 23, 2009) (unpublished) ("Counsel's candor was clearly intended to boost his credibility with the jury, and under the deference owed to legal strategy by counsel, this did not amount to deficient performance.")

The state appellate court's decision did not result in an unreasonable determination of the facts and was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

---

[5] "First-degree murder is punishable by mandatory life imprisonment *without* the possibility of parole." *People v. Wesley*, 421 Mich. 375, 412; 365 N.W.2d 692, 709 (1984) (emphasis in original). Armed robbery is punishable by any term of years, up to life imprisonment. Mich. Comp. Laws § 750.529.

IV

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED** with respect to all of Petitioner's claims, because reasonable jurists would not find the Court's resolution of Petitioner's claims debatable or wrong. *Banks v. Dretke*, 540 U.S. 668, 674 (2004).

It is further **ORDERED** that leave for Petitioner to proceed in forma pauperis on appeal is **GRANTED** because Petitioner has demonstrated his indigent status, *see* dkt. # 14, and an appeal could be taken in good faith. Fed. R. App. P. 24.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: May 28, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 28, 2009.

s/Tracy A. Jacobs
TRACY A. JACOBS

---